**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFERY D. FRANKOWSKI, | ) | CASE NO. 1:12-cv-882 |
| | ) | |
| Plaintiff, | ) | JUDGE GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Jeffery D. Frankowski ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. PROCEDURAL HISTORY**

On August 14, 2009, Plaintiff filed applications for a POD, DIB, and SSI and alleged a disability onset date of November 6, 2008. (Tr. 9.) The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On August 18, 2011, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff appeared, was represented by an attorney, and testified. (*Id.*) A

vocational expert ("VE") also testified. (*Id*.) On September 7, 2011, the ALJ found that Plaintiff was not disabled. (*Id*.) On February 16, 2012, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On April 11, 2012, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On August 10, 2012, Plaintiff filed his Brief on the Merits. (Doc. No. 14.) On September 24, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 15.) On October 9, 2012, Plaintiff filed his Reply Brief. (Doc. No. 16.)

Plaintiff asserts that the ALJ's decision is supported by insufficient evidence because: (1) the ALJ improperly concluded that Plaintiff's mental impairments were not severe; (2) the ALJ failed to account for Plaintiff's mental impairments and migraine headaches in formulating Plaintiff's Residual Functional Capacity ("RFC").

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was born on April 10, 1970 and was 38 years old on the alleged disability onset date. (Tr. 16.)  He had at least a high school education and could communicate in English. (*Id*.) He had past relevant work as a fire chief and paramedic supervisor. (*Id*.)

B.  **Medical Evidence**[1]

1.  **Treating Providers - Migraine Headaches**

During a September 2004 examination for an elbow injury at the Fisher-Titus Hospital emergency room, Plaintiff reported a history of migraine headaches. (Tr. 267.) In August 2009, Plaintiff was referred by his family physician, M.R. Chohan, M.D., to Mark D. Bej, M.D., for a carpal tunnel syndrom consultation. (Tr. 638.) Plaintiff reported a history of headaches – accompanied by nausea and noise and light sensitivty – beginning when he was 24 years old. (*Id.*) Dr. Bej instructed Plaintiff with respect to avoiding migraine triggers and the proper use of medications. (Tr. 639.) During an April 8, 2010 follow-up evaluation, Dr. Bej noted Plaintiff's complaint that he had experienced weekly migraines for the prior three months. (Tr. 628.) Dr. Bej diagnosed Plainitff with "migraine with aura," and instructed him to maintain a diary of his headaches, and to avoid migraine triggers. (*Id.*) Dr. Bej prescribed Sumavel and Topamax to treat Plaintiff's migraine headaches. (*Id.*) On May 13, 2010, Plaintiff reported experiencing two migraines each month, and noted that they were less severe than before. (Tr. 915.)

On August 12, 2010, Plaintiff reported to Dr. Bej that he was experiencing three migraine headaches each month, and that he believed that onions triggered his headaches. (Tr. 916.) Dr. Bej continued Plaintiff on Sumavel and Topamax. (*Id.*) On October 4, 2010, Dr. Bej noted Plaintiff's complaint that he continued to experience

---

[1]  Plaintiff alleged disability on the basis of multiple physical and mental impairments. (Tr. 11.) In his Brief, Plaintiff challenges the ALJ's conclusions regarding only Plaintiff's mental impairments and migraine headaches. (Plaintiff's Brief ("Pl. Br.").)

3

three migraine headaches each month, and increased Plaintiff's dosage of Sumavel. (Tr. 993.) On November 22, 2010, Plaintiff reported that he had experienced two migraine headaches since his last appointment, and Dr. Bej instructed him to maintain treatment regimen and return in six months. (Tr. 991.) On May 23, 2011, Dr. Bej noted Plaintiff's report that he had experienced two migraine headaches since the prior appointment. (Tr. 990.) Dr. Bej instructed him to continue his treatment regimen, and to return in six months. (*Id.*)

### 2. Treating Providers - Mental Impairments

During treatment for a urosepsis and a urinary tract infection at Community Health Partners in December and November 2008, Plaintiff reported a history of depression. (Tr. 319.) Records of examinations by Dr. Chohan reflect that, throughout 2008 and 2009, Dr. Chohan noted Plaintiff to be depressed, and diagnosed him with anxiety/stress disorder and depression, prescribing Celexa. (Tr. 457-61.) In September 2009, Dr. Bej noted that Plaintiff had a slightly elevated score on the Beck Depression Inventory. (Tr. 451.)

In May 2010, Plaintiff began undergoing therapy at Firelands Counseling and Recovery Services ("Firelands"). (Tr. 917.) During a May 26, 2010 initial assessment with a licensed social worker, Plaintiff reported a history of abuse, as well as depression beginning when his older brother died in an automobile accident in 1989. (Tr. 917-18.) The therapist noted that Plaintiff had "significant depression" and was "quite sad." (Tr. 920.) The therapist diagnosed Plaintiff with severe recurrent major depressive disorder, and assigned him a Global Assessment of Functioning ("GAF") of 52. (*Id.*) On June 21, 2010, psychiatrist Michael Hottois, M.D., diagnosed Plaintiff with mild recurrent

depressive disorder, instructed him to continue taking Celexa, and prescribed Zoloft. (Tr. 925-26.)  Dr. Hottois assigned Plaintiff a GAF of 55.  (Tr. 926.)  In July 2010, Plaintiff reported that he felt the medication was helping, as he was less anxious and depressed, and had been sleeping better.  (Tr. 931.)  Dr. Hottois's treatment note reflects that he wanted to rule out PTSD as a diagnosis.  (*Id*.)  On August 23, 2010, Dr. Hottois noted that Plaintiff was feeling more sad, anxious and depressed.  (Tr. 936.)  Dr. Hottois increased Plaintiff's dosage of Zoloft.  (*Id*.)  Plaintiff was alert, coherent and oriented.  (*Id*.)   On September 27, 2010, Plaintiff reported improvement in his mood, noting that he was less anxious and depressed.  (Tr. 940.)

On November 8, 2010, Dr. Hottois switched Plaintiff's medication from Zoloft to Paxil after Plaintiff reported an increase in sadness, anxiety and depression arising out of arguments with his wife.  (Tr. 947.)  Dr. Hottois noted that Plaintiff was alert with a dull affect and coherent speech.  (*Id*.)  On December 6, 2010, Plaintiff reported to Dr. Hottois that his condition was improving on the Paxil, and that he felt less sad and depressed.  (Tr. 951.)  Dr. Hottois included PTSD in his impression of Plaintiff's diagnoses.[2]  (*Id*.)  Plaintiff reported similar improvements in his mood during appointments in January, March, April, June and August 2011.  (Tr. 954, 955, 958, 1333, 1334.)

### 3. Agency Reports and Assessments

On December 14, 2009, agency consulting psychologist Thomas M. Evans,

---

[2]  Dr. Hottois did not explain why he included PTSD in his diagnosis of Plaintiff. However, during a  session with a licensed social worker that immediately preceded Dr. Hottois's December 2010 examination, Plaintiff revealed details of the abuse he experienced as a child.  (Tr. 950.)

5

Ph.D., performed a psychological evaluation of Plaintiff.  (Tr. 493-97.)  Dr. Evans noted that Plaintiff was cooperative and friendly throughout the examination, that his attention and concentration skills were adequate, and that his social judgment was good.  (Tr. 495-96.)  Dr. Evans concluded that Plaintiff was not impaired in his ability to concentrate and pay attention to tasks, to understand and follow simple, repetitive directions, and to relate to other people and deal with the general public.  (Tr. 496-97.)  According to Dr. Evans, Plaintiff's ability to withstand stress and pressure was moderately impaired, based on his depression.  (Tr. 497.)  He diagnosed Plaintiff with depressive disorder, not otherwise specified, and assigned him a GAF score of 57.  (*Id.*)

In a January 6, 2010 Psychiatric Review Technique, agency consulting psychologist Bruce Goldsmith, Ph.D., diagnosed Plaintiff with depressive disorder, not otherwise specified, and concluded that Plaintiff was mildly restricted in his activities of daily living and social functioning; and was moderately limited in his ability to maintain concentration, persistence and pace.  (Tr. 501, 508.)

**C.     Hearing Testimony**

**1.     Plaintiff's Testimony**

At his August 18, 2011 administrative hearing, Plaintiff's relevant testimony was as follows:

Plaintiff experienced migraine headaches approximately three times each month, and they lasted between one and two days.  (Tr. 34.)  He took Imitrex and occasionally sought treatment in the emergency room.  (*Id.*)  His mental impairments made him "not want to do things, not go see people," and interfered with his concentration and

6

memory.  (Tr. 41-42.)

### 2. VE Testimony

The ALJ posed the following hypothetical to the VE:

> Assume . . . an individual, 41 years of age, with a high school education, and [Plaintiff's past work history].  Assume that individual is limited to work at the sedentary exertional level.  Further limited to occupations which do not require climbing – do not require occasional balancing, stooping, kneeling, crouching or crawling. [No] occupations which require constant, repetitive use of the hands.  With those limitations, would that individual be capable of any of [Plaintiff's] past employment, either as he performed it or as it is usually performed in the national economy?

(Tr. 46.)  The VE opined that the hypothetical individual would not be able to perform Plaintiff's past work, but could work as a food order clerk or charge account clerk.  (Tr. 46-47.)  The ALJ asked the VE whether an individual with the limitations described by Plaintiff during his testimony could perform Plaintiff's past work or any other work that exists in significant numbers in the national economy.  (Tr. 47.)  The responded that, based on Plaintiff's testimony that he has migraine headaches multiple times per month, and that those headaches render him incapable of working for one to two days at a time, Plaintiff would not be capable of working full time.  (Tr. 47-48.)

## III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff meets the insured status requirements of the Act through December 31, 2014.

2. Plaintiff has not engaged in substantial gainful activity since November 6, 2008, the alleged onset date.

3. Plaintiff has the following severe impairments: disorders of the spine, bilateral knee problems, migraines, carpal tunnel syndrome, and obesity.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) except that he is not able to climb at all and he is only occasionally able to balance, stoop, kneel, crouch, and crawl. He also cannot use his hands on a constant or repetitive basis.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on April 10, 1970 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. He is now 41 years old; his age category has not changed.

8. Plaintiff has at least a high school education and is able to communicate in English.

    *   *   *

10. Considering Plaintiff's age, education and work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff has not been under a disability, as defined in the Act, from November 6, 2008 through the date of this decision.

(Tr. 11-17.) The ALJ acknowledged Plaintiff's claim that he was disabled on account of mental impairments, including post-traumatic stress disorder ("PTSD"), anxiety and

depression, but concluded that these impairments were non-severe because they "do not cause more than minimal limitations in [Plaintiff's] ability to perform basic mental work activities." (Tr. 11.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports

the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Arguments

Plaintiff argues that insufficient evidence supports the ALJ's determination of his RFC. The Commissioner argues that substantial evidence in the record supports the ALJ's decision in this case.

#### 1. Mental Impairments

Plaintiff argues that insufficient evidence supports the ALJ's conclusion that his mental impairments were not severe and that, even if his mental impairments were not severe, the ALJ erred in failing to account for them in determining Plaintiff's RFC. The Commissioner points to evidence in the record – including Plaintiff's testimony regarding his activities and the results of Plaintiff's various examinations – that Plaintiff's mental impairments were not disabling to support the ALJ's conclusion.

Plaintiff's arguments are not well taken. As a preliminary matter, even if the ALJ erred in concluding, at step two of his analysis, that Plaintiff's mental impairments were non-severe, that error is likely harmless. Although the determination of severity at the second step of a disability analysis is a *de minimis* hurdle in the disability determination process, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), the goal of the test is to screen out totally groundless claims, *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985). Once an ALJ determines that a claimant suffers a severe impairment at step two of his analysis, the analysis proceeds to step three; accordingly, any failure to identify other impairments or combinations of impairments as severe would be only harmless error because step two would be cleared. *Anthony v. Astrue*,

11

266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). An ALJ must consider all of a claimant's impairments, severe and not severe, at every subsequent step of the sequential evaluation process. *See* 20 C.F.R. § 404.1545(e).

Here, although the ALJ concluded that Plaintiff's mental impairments were non-severe, he found that Plaintiff had several other conditions that constituted severe impairments. (Tr. 11-12.) Accordingly, Plaintiff cleared step two of the analysis. *See Anthony,* 266 F. App'x at 457.

Further, there is no merit to Plaintiff's argument that his mental impairments were severe enough to merit further restrictions. It is well established that the claimant bears the burden of establishing the severity of the impairments that determine his RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one through four [of the sequential process for determining whether a claimant is disabled], *when the claimant is proving the extent of his impairments*.") (emphasis added).

Here, although the record contains evidence that Plaintiff sought frequent and ongoing treatment for depression, stress and anxiety, only Dr. Evans opined that Plaintiff was more than mildly limited by these impairments, as he concluded that

Plaintiff was moderately limited in his ability to withstand stress and pressure. (Tr. 497.) Plaintiff points to Dr. Evans's opinion as evidence in support of his argument that the ALJ erred in determining Plaintiff's RFC. However, Plaintiff does not address the ALJ's conclusion that Dr. Evans's opinion regarding Plaintiff's limitations was entitled to little weight. (Tr. 12.) Further, substantial evidence in the record supports the ALJ's conclusion that Dr. Evans's opinion on this point was entitled to little weight. The ALJ pointed to Dr. Evans's other findings – as well as record evidence that Plaintiff reported improvement with medications and that his mental status examinations were usually within normal limits – to assign little weight to Dr. Evans's opinion regarding Plaintiff's ability to withstand stress and pressure.

Other than Dr. Evans's opinion, Plaintiff points to medical records documenting his treatment for depression and anxiety. This evidence, however, says nothing about the severity of Plaintiff's mental impairments. *See, e.g., Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder . . . does not automatically entitle plaintiff to the receipt of benefits. Rather, in order to qualify for the receipt of benefits . . . plaintiff must show that she was disabled by her dysthymic disorder."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Accordingly, Plaintiff failed to sustain his burden of proof with respect to whether his depressive disorder and PTSD constituted severe impairments that merited further limitations in his RFC.

Plaintiff also asserts that the ALJ's conclusion is unsupported by substantial evidence because he did not discuss all of Plaintiff's mental health records. However, it

is well established that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2010).  Here, the ALJ stated that he had considered "the entire record," and concluded that Plaintiff's mental impairments "do not cause more than minimal limitations in [his] ability to perform basic mental work activities and are therefore non[-]severe."  (Tr. 11.)  The ALJ's decision on this issue provides a sufficient explanation for this Court's review, and, thus, Plaintiff's argument lacks merit.

### 2. Migraine Headaches

Finally, Plaintiff argues that the ALJ erred in failing to assign Plaintiff limitations based on his migraine headaches.  Plaintiff points to medical records related to his treatment for migraine headaches, as well as his own testimony regarding their severity and frequency.  However, he does not identify any objective record evidence establishing the severity of his migraines, or their effect on his ability to work.  *See, e.g., Foster*, 853 F.2d at 489; *Higgs*, 880 F.2d at 863.  Accordingly, Plaintiff failed to sustain his burden of proving that his migraine headaches were sufficiently severe to merit limitations in his RFC.  *See Her*, 203 F.3d at 391.[3]

---

[3] Plaintiff also argues that the ALJ improperly substituted his own judgment for the opinion of Plaintiff's neurologist when the ALJ discredited Plaintiff's testimony by noting that the record contained no evidence that Plaintiff had sought regular or frequent treatment in the emergency room for his migraine headaches.  Plaintiff, however, mischaracterizes the ALJ's reasoning.  Rather than questioning the treatment prescribed by Plaintiff's physician, the ALJ noted that record evidence – including descriptions of Plaintiff's activities, and his own testimony regarding his part-time employment as a newspaper delivery person, as well as the lack of emergency room records related to Plaintiff's migraine headaches – discredited Plaintiff's claims regarding the

## VI.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                                                s/ *Nancy A. Vecchiarelli*
                                                U.S. Magistrate Judge

Date: November 14, 2012

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

severity of all of his conditions.  (Tr. 14.)  Further, the ALJ's observation regarding the lack of emergency room treatment was based on evidence in the record, as Plaintiff testified that he occasionally sought treatment for his migraine headaches from the emergency room.  (Tr. 34.)